UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **MYRA ANITA MORRIS** | * | **CIVIL ACTION NO. 06-1774** |
| **VERSUS** | * | |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For reasons assigned below, the decision of the Commissioner will be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## BACKGROUND

Myra Anita Morris filed the instant application Supplemental Security Income payments on October 18, 2004. (Tr. 31-34). She alleged disability since August 1, 2003, due to congestive heart failure, acid reflux, and high blood pressure. (Tr. 32, 40). The claim was denied at the initial stage of the administrative process. (Tr. 22-26). Thereafter, Morris requested and received a January 23, 2006, hearing before an Administrative Law Judge ("ALJ"). (Tr. 184-193) However, in an August 15, 2006, written decision, the ALJ determined that Morris was not disabled under the Social Security Act, finding at Step Five of the sequential evaluation process that she was able to make an adjustment to other work that existed in substantial numbers in the national economy. (Tr. 7-17). Morris appealed the adverse decision to the Appeals Council. On

August 15, 2006, the Appeals Council denied her request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 3-5).

On October 10, 2006, Morris sought review before this court. She alleges the following errors:

1) the Commissioner failed to order an exercise stress test to determine whether plaintiff met Listing 4.02; and

2) the ALJ failed to consider the cumulative effect of Morris's obesity in accordance with Listing 4.02.

## **STANDARD OF REVIEW**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its

judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis;

under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

The ALJ determined at Step Two of the sequential evaluation process that Morris suffered from severe impairments of congestive heart failure, hypertension, and obesity. (Tr. 12, 15). However, he then found that the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id*.

The ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing 42 U.S.C. § 405(b)(1)). The instant ALJ's cursory findings at Step Three did not adequately explain the reasons for his determination. *Audler, supra*. Nonetheless, this omission does not require remand unless the claimant's "substantial rights" were affected. *Id*.[1] A claimant's substantial rights are affected at Step Three when she demonstrates that she meets, or at least appears to meet, the requirements for a Listing. *See, Audler, supra*.

Plaintiff contends that her impairment equals Listing 4.02. The section provides:

---

[1] In other words, the ALJ's error may be harmless. *Id*. (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 2007)).

5

[c]hronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.

>A) Medically documented presence of one of the following:
>
>1)  Systolic failure (see 4.00D1a(I)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
>
>2)  Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

> B) Resulting in one of the following:
>
>1)  Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
>
>2) Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
>
>3) Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
>
>>a)  Dyspnea, fatigue, palpitations, or chest discomfort; or
>>
>>b)  Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

        c) Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

        d) Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.02.

    To establish that a claimant's injuries meet or medically equal a Listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See, Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders*, 914 F.2d at 620. If a claimant does not exhibit all of the requisite findings of a listed impairment, medical equivalence may be established if the claimant has other findings related to the impairment that equal or exceed the required criteria for the listed impairment. 20 C.F.R. § 404.1526(b)(1). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record. 20 C.F.R. §§ 404.1526(c), 416.926(c) (2006).[2]

    The record contains evidence that on August 22, 2003, plaintiff had a left ventricular posterior wall plus septal thickness totaling more than 2.5 cm on imaging, with an enlarged left

---

[2] The regulations formerly provided that medical equivalence was determined from medical evidence only. 20 C.F.R. § 416.926(b) (2006). However, the Commissioner recently explained that despite the change in the regulation, they have always interpreted "medical evidence" to include not just findings from medical sources, but also other information, including the claimant's own testimony. 71 FR 10431 (3/1/2006).

atrium greater than 4.5 cm, with an ejection fraction of 25-30 percent. (Tr. 160).[3] The ejection fraction was below normal at that point, and thus did not meet Listing 4.02A(2). Subsequent test scores during a period of stability revealed an ejection fraction of 50 percent (which is close to normal). (Tr. 106-107). However, the record lacks an echocardiogram documenting the size of plaintiff's left ventricular posterior wall and septal thickness during a period of stability. Recognizing this deficiency, plaintiff argues that because her heart was enlarged upon examination on January 24, 2005, there was every reason to believe that she met the requirements for 4.02A(2). However, the examination report reveal that her heart silhouette was only "slightly" enlarged, and the record contains no evidence to establish a correlation between a "slightly" enlarged heart silhouette and the specific test scores necessary to establish the listing level severity for 4.02A(2). (Tr. 90-93).

The record also lacks evidence to establish that plaintiff meets the B criteria of Listing 4.02. Critically missing is an exercise stress test. Plaintiff contends that this omission is attributable to the ALJ's failure to order an exercise tolerance test. The regulations contemplate various situations where the Commissioner will *consider* whether to purchase an exercise stress test. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.00C(6)(a) (emphasis added). However, the Commissioner will not purchase a test when a determination can be made based on the existing evidence. *Id*. at 4.00C(6)(b). Plaintiff argues that paragraph 4.00C(6)(b) is limited to cases where the claimant is found "not disabled" at steps one or two of the sequential evaluation process. (Pl. Brief, pg. 8, n14). However, this argument is not well-taken. If a claimant were capable of

---

[3] It is worth noting that plaintiff admitted that she had been off of her medication for one year prior to the August 21-22, 2003, event. (Tr. 164). At that time, she promised that she would start complying with her hypertension medication. (Tr. 141-142).

engaging in substantial gainful activity or did not have a severe impairment at the first or second step, then it is redundant to state that the Commissioner will not purchase additional testing. The only reasonable interpretation of the provision is that if the Commissioner can otherwise make his decision at Step Three and beyond, then additional testing will not be obtained.[4] When, as here, a decision can be rendered on the basis that the claimant does not meet the A criteria, additional testing relevant to the B criteria is superfluous and is not required under the regulations.[5]

Plaintiff further contends that the ALJ failed to consider the effects of her obesity as required by Listing 4.00I(1).[6] The ALJ noted, however, that plaintiff did not claim that her

---

[4] Plaintiff emphasizes language in 4.00C(6)(a) which states in pertinent part that "[w]e will consider whether to purchase an exercise stress test when: (1) There is a question whether your cardiovascular impairment meets or medically equals the severity of one of the listings . . . , *and we cannot find you disabled on some other basis* . . ." (emphasis added). The first section of 4.00C(6)(a), however, requires doubt regarding eligibility. When there is doubt regarding eligibility, a finding of "not disabled" is necessarily precluded and thus need not be included in the provision. Paragraph 4.00C(6)(b) clarifies that a test will not be purchased when a determination can be made based on the existing evidence.

[5] Even if the ALJ erred in failing to order further testing, the claimant must also demonstrate resulting prejudice. *Brock v. Chater*, 84 F.3d 726,728 (5th Cir. 1996). "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Id.* (Internal quotes omitted). Morris did not make the requisite showing.

[6] That section provides,
[w]hat effect does obesity have on the cardiovascular system and how will we evaluate it? Obesity is a medically determinable impairment that is often associated with disorders of the cardiovascular system. Disturbance of this system can be a major cause of disability if you have obesity. Obesity may affect the cardiovascular system because of the increased workload the additional body mass places on the heart. Obesity may make it harder for the chest and lungs to expand. This can mean that the respiratory system must work harder to provide needed oxygen. This in turn would make the heart work harder to pump blood to carry oxygen to the body. Because the body would be working harder at rest, its ability to perform additional work would be less than would otherwise be expected. Thus, the combined effects of obesity with cardiovascular impairments can be greater than the effects of each of the impairments considered separately. We must

obesity caused any limitations. (Tr. 13). Indeed, a medical consultant examined plaintiff, noted her cardiac problems, her height, and weight, yet opined that her congestive heart failure was well-controlled, and that she was capable of at least sedentary work. (Tr. 90-93, 95). Moreover, plaintiff's activities of daily living belie a disabling impairment: she prepares meals daily, but prepares complete meals only four days per week; she cleans, does laundry, and irons while taking her time; she drives a car and goes outside daily; she can handle financial matters; she ushers at church; and she is completely able to handle her personal needs. (Tr. 56-66). The ALJ's decision also included the usual statement that "if a 'severe' impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis." The Fifth Circuit has held that the foregoing statement establishes that the ALJ considered the cumulative effect of plaintiff's obesity. *See, Thompson v. Astrue*, 232 Fed. Appx. 421, 2007 WL 1455854 (5th Cir. 5/18/2007)(unpubl.).

In sum, although the ALJ failed to discuss his rationale for his Step Three finding, plaintiff has not demonstrated that her "substantial rights" were affected by the ALJ's omission.[7] *Contrast, Audler, supra*. Thus, any error was harmless. The undersigned further finds that the Commissioner's decision is supported by substantial evidence and is free of legal error.[8]

---

> consider any additional and cumulative effects of obesity when we determine whether you have a severe cardiovascular impairment or a listing-level cardiovascular impairment (or a combination of impairments that medically equals the severity of a listed impairment), and when we assess your residual functional capacity.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.00I(1).

[7] *I.e.*, that she met or equaled a Listing.

[8] Plaintiff did not allege any errors with the remaining steps of the sequential evaluation process.

Accordingly, judgment will be entered AFFIRMING the Commissioner's decision and DISMISSING this matter with prejudice.

THUS DONE AND SIGNED at Monroe, Louisiana, this 15th day of February, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE